# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### (Pittsburgh Division)

| | |
|---|---|
| JACKLENE BLAIR, Personal Representative of the Estate of DONALD J. DAVIS, <br>                               Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br>                               Defendant. | **CIVIL DIVISION** <br><br> Case No.: <br><br> **COMPLAINT** <br><br> Filed on behalf of Plaintiff: <br> Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, <br><br> Counsel of Record for this Party: <br><br> VICTOR H. PRIBANIC <br> PA ID No.: 30785 <br><br> PHILIP C. CHAPMAN <br> PA ID No.: 319448 <br><br> PRIBANIC & PRIBANIC, L.L.C. <br> 1735 Lincoln Way <br> White Oak, PA  15131 <br><br> 412-672-5444 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Pittsburgh Division)**

| | |
|---|---|
| JACKLENE BLAIR, Personal Representative of the Estate of DONALD J. DAVIS, </br></br>Plaintiff,</br></br>vs.</br></br>UNITED STATES OF AMERICA,</br></br></br></br>Defendant. | **CIVIL DIVISION**</br></br>Case No.: |

# COMPLAINT

AND NOW, comes Plaintiff, Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, by and through her counsel, Victor H. Pribanic, Esq., Philip C. Chapman, Esq., and Pribanic & Pribanic, L.L.C., and files the following Complaint against the Defendant, United States of America and in support thereof avers as follows:

## INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act, (28 U.S.C. § 2671, *et seq*.) and 28 U.S.C. § 1346(b)(1), for negligence, professional malpractice and the intentional tort of battery in connection with medical care provided to Donald J. Davis by the Department of Veterans Affairs at the Pittsburgh Veterans Affairs Medical Center on the night of December 4-5, 2015.

2. The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for survival and money damages as compensation for personal injuries, mental pain and anguish, and an unwanted and unnatural life caused by Defendant's failures.

3. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Torts Claims Act. A true and correct copy of Standard Form 95 has been attached hereto as Exhibit 1.

4. This suit has been timely filed, in that Plaintiff timely served notice of his claim on the VA Pittsburgh Healthcare System less than two years after the incident forming the basis of this suit.

5. Plaintiff is now filing this Complaint pursuant to 28 U.S.C. § 2401(b) after receiving the Department of Veterans Affairs' February 1, 2017, notice of denial in lieu of an inability to reach settlement. A true and correct copy of Administrative Tort Claim Denial Letter, dated 2/1/17 has been attached hereto as Exhibit 2.

## PARTIES, JURISDICTION and VENUE

6. Donald J. Davis passed away on July 24, 2017.

7. Plaintiff, Jacklene Blair, was the Power of Attorney of Donald J. Davis in December of 2015 and is currently the Executor of his Last Will and Testament, she will become the Personal Representative of the Estate of Donald J. Davis in the near future.

8. Donald J. Davis appointed his daughter, Jacklene Blair, as his Power of Attorney on January 14, 2014. A true and correct copy of Donald J. Davis' Power of Attorney has been attached hereto as Exhibit 3. A true and correct copy of Donald J. Davis' Medical Power of Attorney has been attached hereto as Exhibit 4.

9. Plaintiff, Jacklene Blair, is an adult individual resident of the state of Tennessee, residing at 350 Rock Ledge, Bristol, TN 37620.

10. Defendant United States of American, through its agency, the Department of Veterans Affairs, operated the Pittsburgh Veterans Affairs Medical Center located the intersection of Brackenridge Street and Allequippa Street, Pittsburgh, PA 15219.

11. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents and staff at the Pittsburgh VA Medical Center are hereinafter collectively referred to as "Pittsburgh VA Medical Center."

12. At all times relevant to this Complaint, the Pittsburgh VA Medical Center held itself out to the Plaintiff and Donald J. Davis, as a provider of high quality health care services with the expertise necessary to maintain the health, safety and medical ethics of patients like Donald J. Davis.

13. At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents and staff were employed by and/or acting on behalf of the Defendant. The Defendant is responsible for the negligent acts of its employees and agents under respondeat superior.

14. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1).

15. Venue is proper under 28 U.S.C. § 1402(b) in that all, or a substantial part of the act and omissions forming the basis of these claims occurred in the Western District of Pennsylvania.

**FACTUAL ALLEGATIONS**

16. During Donald J. Davis' middle aged years, his father suffered a stroke resulting in his receipt of prolonged home health care, during which Mr. Davis' father became completely debilitated and relied completely on others for activities of daily living.

17. Donald J. Davis was present to witness much of his father's incapacitation and suffering.

18. At some point nearing the end of Donald's father's life, his father made a comment to Mr. Davis that "my god Jack, a man ought not have to live like this."

19. In 1999, Donald J. Davis' wife underwent open heart surgery, during which she experienced complications.

20. These complications left Mr. Davis' wife unable to communicate or respond to communications – she spent the final two weeks of her life dependent on medical devices to keep her alive.

21. Following his wife's passing, Donald J. Davis observed his brother, Robert Lewis Davis, spend the final 5 years of his life battling increasingly severe Alzheimer's Disease.

22. During his brother's bout with Alzheimer's Disease, Mr. Davis watched as his brother transformed from the caring and jovial individual that he had once known into a delusional and violent individual who had lost touch with the world around him.

23. These experiences led Donald J. Davis to seek legal advice regarding what steps should be taken to ensure that he did not suffer the same fate as his loved ones.

24. In late 2013 or early 2014, West Virginia Attorney, Thomas Kupec, advised Mr. Davis that appointing a Power of Attorney and obtaining the designation of Do Not Resuscitate / Do Not Intubate ("DNR / DNI") were the most important actions to take to protect himself.

25. On January 14, 2014, Donald J. Davis appointed his daughter, Jacklene Blair as his Power of Attorney. See Exhibits 3 & 4.

26. At some point in time following January 14, 2014, Donald J. Davis explicitly communicated to Jacklene his desire to be designated as DNR/DNI.

27. This conversation, occurring when Mr. Davis was competent and of sound mind, was emphasized and reiterated numerous times over the course of the next several months.

28. Each of Donald J. Davis' four children, Jacklene Blair, Donald D. Davis, Madge T. Davis and Heidi A. Davis were acutely aware of their father's desire to be designated as DNR/DNI.

29. At some point in time during the year 2014, Jacklene Blair, in accordance with her father's wishes, worked with the VA Medical Center in Clarksburg, West Virginia to ensure that Donald J. Davis was formally designated as DNR/DNI.

30. Donald J. Davis' designation as DNR/DNI was confirmed by the VA Medical Center in Clarksburg, West Virginia during the early months of 2015 when the Clarksburg VA provided medical treatment to Mr. Davis for a suspected heart attack.

31. On May 23, 2015, Mr. Davis' health and mental capacity began to decline and his daughter, Madge T. Davis, gave up her full-time employment at Summit Medical to move into her father's home and become his full-time caregiver and companion.

32. On December 1, 2015, Donald J. Davis, accompanied by his daughter Madge, presented to and, ultimately, was admitted into the VA Medical Center in Clarksburg, West Virginia with complaints of swelling in his right lower leg.

33. At the time Donald J. Davis presented to the Clarksburg VA, he was taking Aricept and Namenda, medications used to treat dementia associated with Alzheimer's disease and dealing with symptoms associated with Sundowners Syndrome.

34. The VA Medical Center in Clarksburg, West Virginia diagnosed Mr. Davis with deep venous thrombosis of the right lower extremity and also identified a high-grade heart block, with Mr. Davis' heart rate hovering in the 30s.

35. During the afternoon of December 4, 2015, Donald J. Davis was transported by ambulance from the VA Medical Center in Clarksburg, West Virginia to the Pittsburgh Veterans Affairs ("VA") Medical Center for evaluation and potential placement of a permanent pacemaker in response to his low heart rate – a procedure that was presented to Mr. Davis and Jacklene Blair as a non-invasive method of achieving comfort.

36. Donald J. Davis's daughter and full-time care taker, Madge, rode along with her father during this ambulance ride.

37. Not long after arriving at the Pittsburgh VA Medical Center, hospital personnel addressed with Madge and Mr. Davis his status as Do Not Attempt Resuscitation ("DNAR") and that his standing orders demanded that he not be intubated or mechanically ventilated. Hospital records indicate that this conversation occurred at 7:00 p.m.

38. At this time and throughout the night of December 4-5, 2015, Donald J. Davis wore a wristband identifying his DNR status.

39. During the evening of December 4, 2015, Madge Davis requested that she be allowed to stay with her father at the Pittsburgh VA Medical Center, however, her request was denied and hospital personnel advised that she stay at the nearby Fischer House.

40. Sometime after Madge had retired to her Fischer House accommodations she received a telephone call from Pittsburgh VA Medical Center personnel requesting that she return to the facility because her father was having an "episode" and seeking her presence.

41. Madge did as was requested, returning to the hospital and calming her father down before again being forced to retire to her Fischer House accommodations.

42. Later on that same night as December 4 became December 5, with no family present to comfort him in this unfamiliar location, Mr. Davis' physical condition began to quickly deteriorate: he became hypotensive, hemodynamically unstable and experienced a persistently decreasing mental state.

43. A Progress Note authored by resident physician, Smita J. Kumar detailed the following response to Mr. Davis' acute decompensation: "[p]atient's code status is DNR/DNI; however, in the acute situation h[is] goals of care were readdressed at bedside for the [placement of an emergent temporary pacing wire], as it appeared he may need to be intubated in this acute setting. Patient expressed that he would be ok with intubation . . . patient was intubated for acute respiratory distress. Family was contact several times; however, we were unable to get into contact with them overnight."

44. Ultimately, Pittsburgh VA Medical Center personnel placed a central venous catheter, a temporary transvenous pacemaker, an arterial catheter and performed an endotracheal intubation.

45. The cited indication for intubation was Mr. Davis' "decreased mental state" and, furthermore, they were unable to obtain consent for the endotracheal intubation procedure due to critical illness and no surrogate decision-maker being immediately available.

46. Had the Pittsburgh VA Medical Center provided care and comfort as was required and not intervened in contradiction to Donald J. Davis' DNR/DNI order, Mr. Davis would have passed away naturally as he intended to and consistent with the wishes of those whom he had appointed to make important medical and care related decisions for him.

47. During and in the days following his intubation, Donald J. Davis suffered from cardiogenic shock, respiratory shock and acute kidney and liver ailments.

48. Donald J. Davis was finally extubated on December 14, 2015, nine days after he was first intubated and found at that time to be disoriented – a condition initially attributed to "ICU delirium."

49. On December 27, 2015, doctor's notes indicate that Donald J. Davis continued to suffer from vascular dementia with hypoxic brain injury from cardiogenic shock and, while his condition had improved since being extubated, he had likely reached his new baseline.

50. Over the following 19 months, Mr. Davis' mental status deteriorated rapidly – he spent time in nursing homes, his doctors suspected that he had reached Stage 7 of Alzheimer's Disease, and he frequently was unaware of his surroundings, experiencing hallucinations and required assistance with all activities of daily living, which Madge provided.

51. Mercifully, on July 24, 2017, Donald J. Davis passed away and was rescued from a life that he did not wish to live and that he had, in fact, put into place a plan of action to avoid.

52. During the interval between December 4-5, 2015 and Mr. Davis' death, Jacklene Blair, as Power of Attorney over her father, was charged with the direction and control of his assets and at regular intervals gifted Madge small amounts of money in light of the care and companionship that she provided her father to the detriment of her career.

53. The actions taken by the Pittsburgh VA Medical Center relating to the care of Donald J. Davis during the early morning hours of December 5, 2015, were in direct contradiction of a known standing order and performed in complete disregard for Donald J. Davis' wishes.

54. Had the Pittsburgh VA Medical Center not disregarded Donald J. Davis' DNR/DNI order, Mr. Davis would have passed away from natural causes.

55. Mr. Davis did not have the mental competency to overrule his standing DNR/DNI order during the early morning hours of December 5, 2015, and should not have been asked at bedside while experiencing cardiogenic shock and respiratory failure to make a decision of such magnitude – he had appointed a Power of Attorney to make such decisions for him and she had in fact made this decision well in advance of the complained of events.

56. No messages or voicemails from the Pittsburgh VA Medical Center personnel were left on either Jacklene Blair or Madge Davis' phones during the night of December 4-5, 2015.

57. Had personnel from the Pittsburgh VA Medical Center reached Ms. Blair or Ms. Davis to obtain consent for the endotracheal intubation, consent would have been denied and either of Mr. Davis' daughters would have requested that care and comfort be provided in accordance with their father's standing DNR/DNI order and carefully contemplated end of life plan.

## COUNT I – NEGLIGENCE

58. Plaintiff incorporates by reference herein paragraphs 1 through 57 and further avers as follows:

59. At all relevant times, the Pittsburgh VA Medical Center and all actors or employees thereof were agents, ostensible agents, servants and / or employees of the United States of America.

60. At all relevant times, the defendant was under a duty to oversee all persons whom it employed to render care to patients and to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients.

61. However, Defendant failed to formulate, adopt and enforce rules and policies to ensure that its employees and agents reasonably assessed, determined and effectuated its patients' end of life choices as expressed through Powers of Attorney, living wills and DNR/DNI orders and further ensure that choices and wishes expressed in these documents are honored, respected and complied with.

62. In the alternative, if appropriate rules and policies had been adopted by Defendant regarding the assessment, effectuation and determination of its patients end of life choices, then the Defendant failed to oversee and enforce these rules and policies to ensure that its patients' end of life choices were honored, respected and complied with.

63. Defendant knew or should have known that its failures identified in paragraphs 61 & 62 of this Complaint increased the risk that Donald J. Davis would suffer the harm complained of below, and was, therefore, a substantial factor in bringing about the harm alleged in this Complaint.

64. Defendant's institutional failures as articulated in the preceding paragraphs directly, factually, and proximately increased Mr. Davis' risk of harm and directly, factually and proximately contributed to or caused the severe and serious injuries and damages sustained by Donald J. Davis as is set forth below.

65. This Defendant is liable for the failures identified in paragraphs 61 & 62 of this Complaint pursuant to 28 U.S.C. 1346(b)(1).

WHEREFORE, Plaintiff, Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, demands judgement against the Defendant in the amount of $3,300,00.00 – the same amount that was demanded in Plaintiff's Administrative Claim filed on Standard Form 95 pursuant to the Federal Torts Claims Act.

## COUNT II – RESPONDEAT SUPERIOR and VICARIOUS LIABILITY

66. Plaintiff incorporates by reference herein paragraphs 1 through 65 and further avers as follows:

67. At all relevant times, the complained of directors, officers, operators, administrators, employees, agents and staff were employed by and/or acting on behalf of the Defendant.

68. At all relevant times, the complained of directors, officers, operators, administrators, employees, agents and staff acting within their respective capacities and scopes of employment for the Defendant.

69. The agents and employees of this Defendant were under a duty to render medical and health care services to Donald J. Davis in a manner commensurate with the applicable standard of care for physicians in like circumstances including acting in adherence to and in compliance with their patients' end of life wishes as expressed through Powers of Attorney, living wills and DNR/DNI orders.

70. Donald J. Davis, as a direct and proximate result of the care and treatment rendered and decisions made by the employees and agents of this Defendant, suffered an increased risk of harm and the severe and serious injuries as is set forth below in this Complaint.

71. The employees and agents of this Defendant breached the duty owed to Donald J. Davis and fell below the applicable standard of care when they:

   a. Intubated Mr. Davis despite their actual knowledge of his standing and confirmed DNR/DNI order;

   b. knowingly disregarded Mr. Davis' end of life choices and wishes;

   c. failed to provide care and comfort in preparation for the passing of Donald J. Davis's natural life when it became clear that he was suffering from cardiogenic shock and respiratory distress and intubation would otherwise be required;

   d. attempted to obtain the consent for intubation from Donald J. Davis despite a known history of dementia and documented decreasing mental status;

   e. attempted to obtain the consent for intubation from Donald J. Davis at bedside while he suffered from cardiogenic shock and respiratory failure;

   f. failed to alert additional Pittsburgh VA Medical Center personnel participating in Mr. Davis' care that his DNR/DNI order had been addressed and confirmed only a few hours prior to the complained of intubation;

   g. failed to obtain the consent from Mr. Davis' Power of Attorney to overrule or deliberately disregard a known DNR/DNI order;

   h. refused to allow Donald J. Davis' caretaker, Madge T. Davis to stay with her father despite their awareness that he suffered from dementia, had his Alzheimer's Disease medication recently discontinued and was in an unfamiliar location;

   i. failed to contact Mr. Davis' Power of Attorney upon his admission to the Pittsburgh VA Medical Center to confirm his standing DNR/DNI order; and

   j. failed to ensure that Mr. Davis DNR/DNI status was effectively assessed, documented and effectuated.

72. This Defendant's negligent deviations from the standard of care as articulated within this Complaint were factual causes of the increased risk of harm and severe injuries sustained by Donald J. Davis as is set forth below in this Complaint.

73. This Defendant is liable for the failures identified in paragraphs 68 of this Complaint pursuant to 28 U.S.C. 1346(b)(1).

WHEREFORE, Plaintiff, Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, demands judgement against the Defendant in the amount of $3,300,00.00 – the same amount that was demanded in Plaintiff's Administrative Claim filed on Standard Form 95 pursuant to the Federal Torts Claims Act.

## CAUSE OF ACTION

## SURVIVAL CLAIM

74. Plaintiff incorporates by reference herein paragraphs 1 through 73 and further avers as follows:

75. During his lifetime, Donald J. Davis did not commence any action to recover damages relating to the severe and serious injuries he sustained that are set forth below in this Complaint.

76. Plaintiff, Jacklene Blair, who at all relevant times held a Power of Attorney over her father, will become the Personal Representative of the Estate of Donald J. Davis in the near future. With Donald J. Davis' death occurring only 4 days prior to this Complaint being filed and the 6 month Federal Torts Claim Act filing period running on August 1, 2017 – she has yet to have an opportunity to formally sworn in.

77. Plaintiff brings this action to recover damages on behalf of the Estate of Donald J. Davis pursuant to the provisions of 42 Pa. C.S.   § 8302.

78. As a direct and proximate result of the negligent conduct described above, Plaintiff Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, seeks damages for which the Defendant is liable pursuant to 42 Pa. C.S.§ 8302, which include:

a. 597 days of and unnatural and unintended life that Donald J. Davis had previously contemplated and in fact feared;

b. pain, suffering, inconvenience, embarrassment, emotional distress and mental anguish of one who is forced to live with Stage 6 Alzheimer's Disease;

c. past medical and home care expenses incurred as a result of Donald J. Davis' unnatural life;

d. an hypoxic brain injury occurring during the complained of intubation;

e. the accelerated and unnatural progression of dementia occurring during and caused by the complained of intubation; and

f. any such other losses and damages as are recoverable by law or statute.

WHEREFORE, Plaintiff, Jacklene Blair, Personal Representative of the Estate of Donald J. Davis, demands judgement against the Defendant in the amount of $3,300,00.00 – the same amount that was demanded in Plaintiff's Administrative Claim filed on Standard Form 95 pursuant to the Federal Torts Claims Act.

RESPECTFULLY SUBMITTED:

_____
Victor H. Pribanic, Esquire
Pa. I.D. No.: 30785
Philip C. Chapman, Esquire
Pa. I.D. No.:  319448
PRIBANIC & PRIBANIC, L.L.C.
1735 Lincoln Way
White Oak, PA 15131
Phone: (412) 672-5444
Fax:    (412) 672-3715
*Attorneys for Plaintiff*